**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MELVIN COLBERT,**<br>**Plaintiff,**<br>**v.**<br>**MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,**<br>**Defendant.** | **NO. EDCV 05-1027-MAN**<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff filed a Complaint on November 15, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claim for disability insurance benefits ("DIB"). On November 30, 2005, the parties consented to proceed before the undersigned, pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on July 20, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and directing the payment of

---

[1] Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

benefits or, alternatively, remanding the case for a new hearing; and Defendant requests that the Commissioner's decision be affirmed. The Court has taken the parties' Joint Stipulation under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed his current application for DIB on August 11, 2003. (Administrative Record ("A.R.") 50-53.) Plaintiff claims to have been disabled since January 18, 2002, due to bilateral wrist strain/sprain, arthritis, carpal tunnel syndrome, and depression. (A.R. 11, 50.) He has past relevant work experience as a crane operator and maintenance engineer. (A.R. 11.)

The Commissioner denied Plaintiff's claim for DIB initially and upon reconsideration. (A.R. 21-32.) On May 2, 2005, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge James Carletti ("ALJ"). (A.R. 262-92.) On August 23, 2005, the ALJ denied Plaintiff's DIB claim, and the Appeals Council subsequently denied Plaintiff's request for review of the ALJ's decision. (A.R. 8-19, 4-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

In his August 23, 2005 written decision, the ALJ found that Plaintiff: has not engaged in substantial gainful activity since January 18, 2002; met the disability insured status requirements as of that date; and continued to meet them through the date of the decision.

(A.R. 17.) The ALJ found that Plaintiff has "severe" impairments consisting of bilateral wrist strain/sprain, arthritis, and carpal tunnel syndrome, but that Plaintiff does not have an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, Appendix 1, Subpart P, Regulation No. 4. (*Id.*) In addition, the ALJ found that Plaintiff: was a "younger individual" pursuant to 20 C.F.R. § 404.1563 at the time of the decision; has a high school education pursuant to 20 C.F.R. § 404.1564; and does not have any transferable skills pursuant to 20 C.F.R. § 404.1568. (A.R. 18.) Further, the ALJ found that Plaintiff's testimony regarding the degree of his impairments and limitations was not credible. (*Id.*)

In setting forth Plaintiff's residual functional capacity, the ALJ found that:

> [Plaintiff] retains the residual functional capacity to perform a range of light work activities. [Plaintiff] is able to lift and or carry ten pounds frequently and 20 pounds occasionally, and to sit, stand, and or walk for six hours per eight hour workday. [Plaintiff] is precluded from frequent left upper extremity hand controls. [Plaintiff] is precluded from climbing ladders, ropes, or scaffolds. [Plaintiff] is limited to occasional climbing, balancing, or crawling. [Plaintiff] is limited to frequent stooping, kneeling, or crouching. [Plaintiff] is unable to perform frequent forceful gripping or frequent fine fingering with the left hand. [Plaintiff] must avoid concentrated exposure to vibration or extreme cold. [Plaintiff] is unable to perform significant

> manipulation, and is limited to occasional gripping, grasping, feeling, and fingering. [Plaintiff] is precluded from more than occasional overhead activities (20 CFR § 404.1545).

(A.R. 18.) Based on this residual functional capacity finding, the ALJ found that Plaintiff was unable to perform his past relevant work. (*Id.*)

Relying upon the testimony of the vocational expert, the ALJ found that Plaintiff could perform other work in the national economy, such as the jobs of a cashier, order caller, and information clerk. (A.R. 18.) Incorporating the additional limitations found by Dr. Thomas Dorsey into Plaintiff's residual functional capacity, the ALJ found that Plaintiff could perform the job of an information clerk. (*Id.*) Accordingly, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act. (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y. of Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id*. at 1041; *see also* Morgan v. Comm'r. of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Secretary, 44 F.3d 1453, 1457 (9th Cir. 1995).

## DISCUSSION

Plaintiff alleges three issues. First, Plaintiff contends that the ALJ erred in failing to consider properly the evidence submitted by Dr. Ahmad Tarar, one of his treating physicians at the Veterans Administration Medical Center at Loma Linda ("VAMC"). Second, Plaintiff contends that the ALJ improperly found that Plaintiff does not have a "severe" mental impairment. Third, Plaintiff contends that the ALJ failed to discuss and consider the side effects of his medications. (Joint Stip. at 5.) The Court addresses the first and second issues together.

**A. The ALJ Committed Error With Respect To Plaintiff's Claimed Mental Impairment.**

In the proceedings before the Commissioner, Plaintiff alleged that he suffered from a mental impairment and submitted psychiatric treating records in support of his DIB claim. The ALJ, however, found at the Step Two level that Plaintiff's claimed mental impairment was not "severe." (A.R. 13-14.)

Plaintiff contends that the ALJ improperly found that he did not have a "severe" mental impairment. (Joint Stip. at 7-8, 11.) Plaintiff contends that this error flowed from the ALJ's failure to evaluate and consider adequately the opinion of Dr. Tarar, one of his treating physicians at the VAMC. (Joint Stip. at 3-5, 6-7.)

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28 and Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not severe was not supported by substantial evidence, because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d

1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

The ALJ concluded that the "psychiatric treating records from the Veterans' Administration medical center . . . fail to reflect signs or symptoms of mental impairments with more than minimal functional limitations." (A.R. 14.) The ALJ then briefly addressed VAMC treatment records dated June 21, 2004, July 20, 2004, August 4, 2004, September 20, 2004, December 30, 2004, and January 31, 2005, with respect to Plaintiff's physical and mental condition. (A.R. 14-15.) The ALJ characterized the treatment notes from these dates regarding Plaintiff's mental impairment as indicating no more than: "moderate to severe depression" (June 20, 2004); an "unremarkable" CT scan of Plaintiff's brain (July 20, 2004); a "mild impairment," no hallucinations for eight months, depression, sad mood, mildly flat affect, and no other clinical abnormalities (August 4, 2004); appropriate behavior, normal speech and thought processes, fair cognition, and stable affect (September 20, 2004); improved depression, affect constricted and congruent with mood, normal mental status signs, and "only mildly impaired" global functioning (December 30, 2004); and a "normal" mental status examination, although Plaintiff reported mild residual auditory hallucinations and exhibited depressed mood with congruent effect (January 31, 2005). (*Id.*)

The Court find the ALJ's description of these treatment notes regarding Plaintiff's mental condition to be incomplete and, in some

respects, inaccurate. (*See, e.g.,* A.R. 239 -- Dr. Steven B. Hardin's progress note, indicating that Plaintiff had experienced auditory hallucinations since 2001, and still experienced them; 243-44 -– Dr. Manuel Luckvin's November 15, 2004 progress note, indicating that "[Plaintiff] [r]eports that his paranoia is decreased with [R]isperdal, but continues to hear voices of his former boss degrading him" and "reports other voices telling him he needs to be more productive," and diagnosing Plaintiff with "major depressive disorder moderate improving" and "psychoses [not otherwise specified] improving"; 246-47 –- Dr. Nirav Joshi's September 20, 2004 progress note, indicating that Plaintiff "still hears voices daily, particularly family members chastising him" and "admits to continued thoughts of being followed," noting that Plaintiff's judgment and insight were "poor," diagnosing him with psychoses, and assessing him with a Global Assessment of Functioning score ("GAF") of 57;[2] 249-53 –- Dr. Daisy Lynn Galario's August 4, 2004 progress note, diagnosing Plaintiff with psychosis not otherwise specified and indicating that he: has suffered from depression since his 2002 diagnosis and commencement of psychiatric treatment; has difficulty sleeping and concentrating; has had suicidal thoughts and heard voices in the past; in April 2004, felt sad and contemplated driving his car into another car to hurt both himself and the other driver; and in November 2003, after finding his car window broken and believing a neighbor had done it, ended up driving aimlessly to Texas, where he was stopped by the police (who thought he was a danger to

---

[2] A GAF of 51-60 shows "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Diagnostic and Statistical Manual of Mental Disorders Text Revision("DSM"), 34 (4th ed. 2000).

himself) and heard his brother's voice telling him to "jump" the police.) In particular, the ALJ failed to fully and adequately consider Dr. Tarar's opinion.

In a January 31, 2005 progress note, Dr. Tarar described Plaintiff as follows:

> Patient is a 47 [year old African-American male] with 2-3 years [history] of depression with psychosis. He is currently on zoloft and risperdal. He still has depressive [symptoms] but could not tolerate a higher dose of zoloft due to GI side effects. He reports self talking and thinks about his medical problem, job loss and financial stress. [H]e reports auditory hallucination improved with risperdal but not gone and he still hears in the background. He has been compliant. Reports been tried on zyprexa but quit due to weight gain. (Please see intake on 8/4/01).
>
> Plaintiff is a 47 [year old African-American male] who is dressed casually with fairly good hygiene and grooming. He is oriented to time, place and person. He is i[n] a depressed mood with mood congruent affect. He is obsessed about his medical condition and his job loss due to unfairness of his boss. He is nondelusional but expresses ideas of referrence. [H]e has auditory hallucinations "in the background." He has insight about his situation. He denies any suicidal or homicidal ideations at this time.

(A.R. 242.) Dr. Tarar diagnosed Plaintiff with major depressive disorder with psychoses versus psychosis, not otherwise specified and rule out schizoaffective disorder, and assessed Plaintiff with a GAF of 50.[3] Additionally, Dr. Tarar doubled Plaintiff's Risperdal dosage "to control psychosis," but did not increase Plaintiff's Zoloft dosage to avoid gastrointestinal side effects apparently reported by Plaintiff when the drug was taken at a higher dosage. (*Id.*)

The ALJ's sole discussion of Dr. Tarar's opinion is to note briefly that: Plaintiff's "medications were adjusted"; Plaintiff reported "mild auditory hallucinations, and exhibited depressed mood with congruent affect"; and the remainder of Plaintiff's "mental status examination was normal." (A.R. 15.) However, it is inaccurate and misleading to note only that Plaintiff's medications "were adjusted," without acknowledging that Dr. Tarar upped the dosage on one to "control [Plaintiff's] psychosis" and his continuing auditory hallucinations, but could not increase the dosage on the other, even though Plaintiff still had depressive symptoms, due to side effects. *See* Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion). Moreover, the ALJ ignored the substance of Dr. Tarar's note, including his diagnosis of major depressive disorder with psychoses and a GAF of 50, and, instead, improperly stated that Dr. Tarar's examination of Plaintiff "was normal." *See* Reddick v. Chater, 157 F.3d 715, 723 (9th Cir. 1998)(it is impermissible for the ALJ to

[3] A GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessive rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job)." DSM at 34.

develop an evidentiary basis by "not fully accounting for the context of materials or all parts of the testimony and reports"). The ALJ's discussion of this treating physician's opinion, thus, was error.

While the record contains only one progress note from Dr. Tarar, the VAMC medical records show that this physician was one of a group of physicians treating Plaintiff. Dr. Tarar's comments are consistent with the above-noted comments of the other doctors who treated Plaintiff at the VAMC. The totality of treatment notes, including Dr. Tarar's note, indicate that, although Plaintiff's condition was responsive to medication, his medications (both anti-psychotic and anti-depressant) did not resolve his symptoms and limitations entirely. The symptoms reflected in those notes, including Plaintiff's depression and auditory hallucinations, were indicative of an impairment having more than a minimal effect on his ability to do basic work activities and which had existed for a number of years. Further, although a GAF score is not necessarily indicative of disability, the GAF scores found by VAMC physicians, ranging from 50 to 65, further suggest that Plaintiff's mental impairments have more than a "slight" impact on his ability to function. Thus, the ALJ's characterization of these notes –– as "fail[ing] to reflect signs or symptoms of mental impairments consistent with more than minimal functional limitations" -- is not accurate.

In view of the significant symptoms and limitations noted in these treating records, the ALJ's finding -- that Plaintiff's claimed mental impairment is not "severe" –– is not supported by substantial evidence. Accordingly, the ALJ's finding at Step Two that Plaintiff has no "severe" mental impairment constitutes reversible error.

**B. <u>The ALJ's Treatment Of Plaintiff's "Side Effects" Does Not Warrant Reversal</u>.**

As his third issue, Plaintiff complains that the ALJ failed to consider and discuss the "side effects" Plaintiff experienced from his anti-psychotic (Risperdal) and anti-depressant (Zoloft) medications. While an ALJ must consider the side effect of medications when assessing a claimant's subjective symptoms (*see* 20 C.F.R. § 404.1529(c)(3)), the ALJ found Plaintiff's subjective symptom testimony to be not credible and Plaintiff does not challenge that finding here.

Moreover, and critically, Plaintiff, fails to identify any evidence of "side effects" from these two medications, other than Dr. Tarar's indication that he would not increase Plaintiff's Zoloft dosage, because Plaintiff reported experiencing "GI side effects" at a higher dosage. Because the dosage was not increased to avoid such side effects, the ALJ did not err in failing to explicitly discuss such "GI side effects." The other VAMC records do not indicate that Plaintiff experienced any chronic and/or significant gastrointestinal upset, much less describe any gastrointestinal-related limitations resulting from Plaintiff's use of Zoloft or any other side effects from the two medications. While Plaintiff generally contends that gastrointestinal upset or unidentified "side effects" would have "significant ramifications" on his ability to work, Plaintiff does not contend how, or in what way, such side effect(s) impact his residual functional capacity. *See* <u>Burch v. Barnhart</u>, 400 F.3d 676, 681-82 (9th Cir. 2005)(ALJ did not err by failing to discuss the effects of the claimant's impairment of obesity and its combined effect on her other impairments, as there was no

showing that the claimant's obesity caused any functional limitations or exacerbated any other impairments).

Accordingly, the Court does not find any reversible error based on the third issue raised by Plaintiff.

**C. Remand Is Required.**

Having found the ALJ's decision deficient, the Court must decide whether to award benefits or remand for further proceedings. Where, as in this case, the ALJ improperly rejected Plaintiff's mental impairment as non-severe, remand is appropriate to allow the Commissioner to correct this error and conduct further appropriate proceedings. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(where ALJ erred in rejecting treating physicians' opinions, remand for further proceedings is appropriate if enhancement of the record would be useful); Higbee v. Sullivan, 975 F.2d 558, 561-62 (9th Cir. 1991)(remanding case in order to develop the record); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order. Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum

Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 12, 2007

/s/
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE